All right, so our case this morning is 20-4039 Taylor v. Powell, and for the appellant, Utah, Mr. Peterson, you may proceed whenever you're ready. Thank you, Your Honor. I hope to reserve about six minutes. May it please the court, Andrew Peterson for appellate warden. The miscarriage of justice gateway is equitably concerned only with the injustice of incarcerating or executing a factually innocent person. Mr. Taylor is not innocent of the crime he pleaded to, capital murder, and there's no miscarriage of justice in executing his sentence. The district court's fundamental error here occurred when it wrenched capital murder into two separate crimes, principal capital murder and accomplice capital murder, that don't exist under Utah law. But then in violation of both Shloop and Bowsley, it froze the inquiry at that point, at the point of the plea, and refused to conduct the probabilistic analysis of what a properly instructed jury would do had the case gone to trial. No one has ever disputed that proper instruction would have included accomplice liability, especially if Mr. Taylor argued the no fatal shot defense. Accomplice liability, though, have a different element than principal liability. And in the plea agreement, there was no explicitly stated reference that he was being charged with and was pleading guilty to accomplish liability. How do you get around that? Well, two ways, at least, Your Honor. The first is that no, accomplice liability is not a separate crime. And secondly, the plea agreement or rather the plea form and all of the processes leading up to the plea did notify Mr. Taylor of the possibility of accomplice liability being raised. To the first, the Utah cases are very clear that accomplice liability is a theory. It's a means of committing the underlying crime. Mr. Taylor rests his argument. So you're saying there, counsel, that the elements are the same? Yes, the element is causes of death. Accomplice liability is a means by which one can cause a death. It is not a defined element of the crime. The capital murder statute alone defines the elements of the crimes. And the accomplice liability statute is a wholly separate statute not defining any crimes. But in Utah, don't prosecutors charge defendants frequently with just committing accomplish liability for the accused crime? It can be done. I don't think anybody has any information about the frequency of that. Of course, the case in re DB says that the best practice is to notify the defendant in the information of the intent to pursue accomplice liability. But they reaffirmed that one does not that the prosecution does not have to put that in the information. In fact, they reaffirmed. If we start with the information, is the defendant notified of the possibility of accomplice liability through the information? Well, certainly it's implied by the conjunctive and Taylor and Delhi. But then it becomes even more crystal clear by the time of the preliminary hearing when Mr. Taylor and Delhi, Mr. Taylor and Delhi both attempted to escape liability altogether by saying, well, we don't know whose bullets did this. They could be the other guy. And so the prosecutor retorted, but they're both accomplices. And so it doesn't matter if we don't know which guns or which bullets caused any fatal wounds. And then the magistrate very explicitly bound the matter over as principal and accomplice both. And he he both cited and quoted the accomplice liability statute. You referenced TV as a notice case. And is it your interpretation of Utah law that a defendant can go to trial primarily as a principal? He's charged as a principal here under the under that provision. And at what point does Utah law require the defendant be giving notice of the accomplished liability theory? Can can you go all the way into the prosecution's case in chief? Last witness. And at that point, the evidence comes in that he might be liable as an accomplished. Would that would that be adequate notice to get a jury instruction for accomplice? Well, that is precisely what DB says, that while best practice would encourage prosecutors to put notice in the information, so long as the government puts on evidence during its case in chief, which allows then the defendant to try to rebut that in their case in chief, then that is sufficient notice. But the more fundamental point is that notice itself is a trial right. That's a due process issue. The fundamental miscarriage of justice, equitable exception to the default rules, is unconcerned with potential procedural errors leading up to the plea. The fundamental miscarriage of justice standard is concerned only with the equitable question of whether the person is or isn't guilty of the crime that they were convicted of. If Taylor had been charged, charged with accomplished liability and went to trial. Could could he be convicted as a principal based on the evidence that came in at trial? Well, could the jury be instructed that he would he was a principal? The state's position has always been that that he was a principal, that the bullets from the 38 did cause. No, that's not that's not my question. Of course. So you're asking on the on the district court, the district court's findings here. Under Utah law, can a person who's charged with and goes to trial as an accomplice also have a jury instruction, be convicted of being a principal? Yes. I mean, it would certainly be up to the jury to decide as a matter of fact whether he was a principal or a an accomplice. But it's I'm sorry. Go ahead. I'm sorry, Judge Moritz. Well, I was just I think Utah law didn't the Briggs case answer that question in some respects. In that case, I think the court held that you can't be charged simply as an accomplice because it's a theory of liability. So you really can't be charged as only an accomplice, I think, is what one can't be charged or convicted as an accomplice standing alone where no underlying crime took place. If there's not a principal, there's also not an accomplice. And that's the import of the standing alone language. In Briggs. OK, right. So. So in Briggs, the point there is, is that there was a crime charged. You have to have here in our case, you have to have the homicide charge. Right there. There has to have been a murder for there to be an accomplice to it. Correct. So it's Briggs telling us that there's no such thing as going to trial just in the vacuum of being an accomplice. You have to be an accomplice to something. I think that's right. That's how I read the case law, not just Briggs, but all of the case law together. So the district court here explicitly refused to conduct the probabilistic inquiry into what a properly instructed jury would have done. Instead, the district court artificially froze the analysis at the point of plea. That is to say, the court considered the plea terms to to dictate what the jury could have been instructed on. And in the courts, in the district court's view, that was limited to principal murder. And, of course, that's a separate independent error of its of its own significance. But under the under sloop, the district court should have done three things that it failed to do. Number one, it should have gained out what would have happened at trial in light of Mr. Taylor's new evidence. Had that had that evidence been presented to the jury, what would that trial have looked like? Number two, it should have made a probabilistic determination that the prosecution would then ask for and unquestionably receive an accomplice liability instruction. And number three, it should have then determined that the jury thus instructed would have convicted Mr. Taylor of capital murder. But instead, the district court, instead of doing those three things, the district court refused to consider what would have happened. And it did so for three independently erroneous reasons. Number one, the district court said, well, Taylor never went to trial, so we'll never know what would have happened. Of course, what would have happened is the exact question that sloop required the district court to answer. Number two, the district court found that Mr. Taylor pleaded guilty to the invented crime of principal capital murder. And number three, the district court conducted what essentially amounted to error correction review and determined that Mr. Taylor had improper notice of accomplice liability and that a conviction on that basis would have been procedurally invalid. Of course, that latter determination is anathema to the fundamental miscarriage of justice equitable standard. So essentially, before you get into those three errors, alleged errors, I guess I would say I want to make sure I understand, at least in the first part of your brief, you spend a lot of time talking about the plea, the plea agreement itself and the fact and what happened at the preliminary hearing as far as providing notice to the defendant that he was being essentially charged with accomplice liability or he should have been on notice. But you don't even really need that if I'm understanding this part of your argument correctly. It's sort of an alternative argument, which is that you're just addressing those things because the district court did and looking at them in a different way. But you don't even need to you don't even need to address whether the plea agreement or the or the information gave him notice because he could have had notice at trial when they were doing this probabilistic. Well, sorry for the long question, but I just want to make sure that it's like a two part argument. Essentially, you're saying it exactly right. Doctrinally speaking, notice and accomplice liability were theoretically irrelevant to the question because the question is, is he guilty of capital murder? Of course, as you point out, the district court addressed it as a as a notice problem. And so we're simply pointing that pointing out that even as a matter of fact, the district court was mistaken to have read this in any way that that undermined Mr. Taylor's awareness that he was being charged and convicted as an accomplice. But you're right. We don't need the notice. We don't need the the preliminary hearing or the the plea agreement taking responsibility for Mr. Taylor's actions. All of that is an extra reason that the district court. So when you make that argument, you're looking backward. That's the problem. The problem there, as far as you're concerned with what the district court did is the district court look backward rather than forward. Yes, I think the district court essentially froze the inquiry at that point and refused to consider what the trial would have looked like had it unfolded in light of the new evidence. So in that sense, it's backward looking. And of course, the appellee and the appellant disagree on the formulation of how that standard unfolds. Forward looking versus backward looking. Really, I think for the most part, we're saying essentially the same thing where I think we're both saying you need to rewind the tape. You need to add in the new evidence that we now know and then play the tape forward. And it's essentially a logic game at that point. We game out what the trial would have looked like. And it's that's the step that the district court skipped. It refused to game out going forward again. Once you press play on the tape. So in that regard, the analysis is not a whole lot different from a Strickland prejudice inquiry. It is possible. I mean, it would have to at least look to Utah law, I suppose, to make sure that even in this probabilistic inquiry that notice was not required to be given somehow before or either in the plea agreement or in the information up to that point. Right. Does that make sense? I don't I don't quite know how to answer your question. I think that might be right. But the problem with that presumption is that, again, notice and procedural error is not the question. The question is always the fundamental miscarriage of justice of of convicting an innocent person. And so. So can't you can't you can't you read Bowsley, though, to counter the position you're taking here about accomplished liability? No, the problem in Bowsley is that the crime he was charged with and convicted of was essentially no crime at all. And he was he was never charged with the wholly separate crime of there was used versus Kerry. He was charged with one. And there's those are those are separate elements. And we have separate elements here, don't we? We don't. The elements are causes the death of another knowingly or intentionally under an aggravated circumstance. So the jury instructions under Utah law would be the same for principle and the elements instruction would be the same. There certainly would need to be a separate instruction on accomplished liability. But but under even under Bowsley, it's not necessary that, you know, every every statute bearing on responsibility being noticed in the in the information or the charge. A helpful illustration of what I'm talking about would be constructive possession of contraband that the element is possession. Right. But one can possess contraband in a couple of different ways. One is either actual physical possession or another would be constructive possession. And while constructive possession does require separate conduct, separate evidence and likely separate instruction on how to interpret the constructive possession. It is not a separate element. It's simply a separate theory of possession. We disagree with you on that, on this element point. Do you lose or does the actual innocence gateway open if we disagree that accomplished liability is contains a different separate element? Well, no, because, of course, as we've argued, alternatively, Mr. Taylor both received notice and in fact pleaded guilty for the conduct of Mr. Deli. So. So, no, I think you would you would have to you'd have to find against the warden on both of those points for for the Shlute gateway to remain open to Mr. Taylor. It really makes my head spin about going back and rewinding the tape on these trials for a sci fi fan. It's like a man in High Castle where we have all these counterfactuals that that we have to speculate on it. You know, this seems like it ought to cry out for more of a bright line rule than than Utah seems to be advocating. Well, I mean, there's there's a very common sense way of understanding this is Mr. Taylor guilty of capital murder. And there's no question that he is. He fired the first shot in the volley that ended in two women's deaths. He participated fully in the burglary, both before the murders and all of the crimes afterward. He was up to his neck in this. And there's there's not a jury anywhere that's going to acquit him of murder on these facts, even if they knew that that none of his bullets caused fatal wounds. This is the whole point of party liability is is where two or more defendants are apparently guilty of the crime. They've all participated in the crime and they each want to escape liability by pointing the finger at the others. The legislature has made a decision that you don't escape liability that way. So, for example, if if all of the wounds and both Mr. Taylor and Mr. had been firing 44 handguns, they wouldn't either one of them get out of Dutch by saying, well, we don't know which bullet caused which fatal wounds. So I can't be held liable for these murders. If if it was either unknown or unknowable, certainly party liability would make both of them equally liable. And if that's the case, then it simply doesn't matter that that we do, in fact, know which bullet caused which fatal wounds. The legislature has made them in the preliminary hearing when the statements were made by the prosecutor there that in response to arguments made there by the defendants, both being at issue that accomplice liability was a possibility here and accomplished that statute was read. Your opposing counsel said all of that discussion really applied to Delhi and not to Mr. Taylor. What do you say in response to that? Well, a couple of things. Mr. Daly's counsel was the first to raise it, I believe. But then Mr. Levine, who represented Taylor, jumped on that bandwagon and argued the same thing. I've quoted it in both my opening brief and my reply brief. And of course, the the prosecutor's response was, judge, don't be deceived by this. They're both accomplices, too. And the rather the magistrate agreed that they were both accomplices. So you're arguing that that colloquy at the preliminary hearing gave this defendant notice of a potential of an accomplice theory at trial? As a matter of fact, it did. And of course, legally, that notice could have come at any time up to the close of the state's case. And of course, notice is an error correction problem irrelevant to the fundamental miscarriage of justice. Did the district court ever clarify what it meant as far as granting a conditional writ rather than an unconditional writ? I don't believe it did, Your Honor. The final judgment was a little tricky to understand. It talked about vacating the plea, for example, which is not really something that is done by writ of habeas corpus. The writ was granted and we're just simply sort of assuming that this was a conditional grant. So what should that last line say? If we affirm the district court, what should the district court have said? It should have said that it granted a conditional writ, conditional upon the state correcting the error within a certain amount of time. And that correction would come through retrial. Yeah, with the potential for remand and retrial. What do we do with the other eight counts? He pled here to two counts, one and two. What do we do with the other eight counts? Well, the district courts granted the writ essentially puts him back in the same position he was in before the plea. So all of those all of those counts revive. The state would then be free to try him on all of them. I only have about a minute left. And with that minute, if I may, I'd like to switch to point to the ineffective assistance point. I'd like to emphasize that even if the court were to determine that the schlute gateway remained open to Mr. Taylor, there are still independent reasons why the writ was granted in error. And that's because Mr. Levine was not deficient for not investigating or presenting the no fatal shot defense. There remains irrespective of the district court's views on actual innocence. There remain reasonable professional reasons not to investigate the no fatal shot theory. First of all, there was at the time from counsel's perspective, there was good reason to believe that the bullets, in fact, were Mr. Taylor's bullets. And investigating further might only incriminate. Secondly, reasonable counsel could think that it was a pointless exercise at best and a waste of time and money at worst. Because so what? He's still guilty of capital murder. Mr. Taylor has has always conceded that he could still be found guilty as an accomplice. And then lastly, on deficient performance, this inquiry inquiry is also much broader than the schlute inquiry. Hill versus Lockhart required that he that Mr. Taylor would have insisted on going to trial had had his counsel not been deficient. But, of course, Mr. Taylor has never proffered evidence that he, in fact, would have gone to trial. He's never said personally I would have gone to trial. And under United States versus Clingman from this court, that's a necessary proffer, which he's never made. I'll give you some rebuttal time. I'd like you to cover your your strongest argument. If we disagree with you on deficient performance, your strongest argument on prejudice. The district court's notion that Mr. Taylor would have insisted on trial was based on its belief that he was misled by the state of the forensic evidence at the time of the plea. But he was not misled. Everyone agrees throughout the entire proceeding. Everyone agrees. And it is undisputed that a 44 bullet caused the fatal wound to Ms. Potts. The head wound to Ms. Potts was the fatal wound. Everyone agrees. And according to Mr. Taylor, he knows whether or not he fired the 44. So he pleaded guilty to Ms. Potts death, knowing that that that according to him, that he didn't actually shoot the gun at her. So he was not misled by any forensic evidence. No one ever told him you are responsible for firing the fatal bullet to Ms. Potts. He pleaded based on evidence that he knew about, which showed even under his own version of events that that Mr. Deli fired at least one of the fatal bullets. Couldn't a rational defendant want reason to prefer to be convicted of a compass liability versus principal liability? I don't know. Death penalty case. I don't know why they would, because legally they're they're no different. They're both subject to the death penalty. And even if the jury were convinced that Mr. Taylor didn't fire any of the fatal bullets, there is still a strong likelihood of him being sentenced to death here, given that he was the first person to fire the bullets and his participation in all of the other crimes up to and especially including firing twice into the head of Mr. Tito Rolf and then dousing him with gasoline and lighting the cabin on fire. Wouldn't it have been relevant to the jury, perhaps mitigating evidence at the at the sentencing stage? I know you're not making that argument, but isn't that where it really might have made a difference? I don't think so, because, again, I tried to kill them, but I missed is not a good defense. That's not mitigate. He tried his best to kill both of them. And and whether or not his bullets were the fatal ones, that's not going to fool anybody into into thinking that he's less culpable in any meaningful way than Mr. Taylor. All right. I know you wanted to save some rebuttal, Judge Moritz and Judge Briscoe. Any any additional questions before we move to the defendant? Well, I did want to pursue that just by it's possible, perhaps not under these factual under this fact scenario. It is possible that it might be relevant at the at the death penalty stage, for instance, in the case of the defendant, the co-defendant here, who who ultimately was convicted as an accomplice, isn't that right? No, he was convicted of felony murder. I'm sorry. I know. But under an accomplice theory, no, no, no. He was a participant in the felonies where where murders happened. That's that's what the jury found in his case. OK, so it wasn't specifically. But I thought there was an accomplice instruction in that case. Oh, I don't I don't know if there was an instruction, but they convicted him of a second degree murder, which was felony murder. My point was, had he been charged with the death penalty? He it might have been relevant because his position was I didn't fully participate. I didn't want to. I held the gun, but I didn't I didn't want to shoot it. I you know, I sort of did it unwillingly, I guess. So that would in that case, maybe that would have been relevant to the jury. There are two. There are two separate and incommensurable universes of evidence that we're talking about here. One is the universe of evidence that the district court here found. And the other is the universe of evidence available to Delhi's jury to Delhi's jury. There was no evidence that Mr. Delhi fired any bullets at all. All of the evidence that we that we can surmise from from the admittedly sparse record there is that everyone agreed that Taylor fired all of the shots and that Mr. Delhi was surprised and perturbed by Mr. Taylor having done that. That alone is a very different set of circumstances than than the sort of comparative fault that one might discuss on the district court's universe of evidence. And, of course, the miscarriage of justice standard is unconcerned with, you know, any inequities in in punishing two different code of conduct. It's only concerned with the inequity of. Yeah, I understand that two different two different worlds as far as the the evidence of his trial. I just my point is there are certainly cases and circumstances under which that might be relevant. The fact that he was the accomplice and not the principal and the circumstances of that might be relevant to the jury in deciding mitigation or considering mitigation evidence. I agree that on different facts, it could it could be relevant. But on these facts where the evidence is, both of them are trying to kill both victims. It's hardly mitigating that one of them missed. All right, counsel. Thank you for the argument. I'll give you some rebuttal time. Let's turn to Mr. Taylor and Mr. Pomerance may proceed. Morning, your honors. May it please the court. Brian Pomerance on behalf of a Pele von Taylor. I'm going to start at the end of where the discussion just was while it's while it's fresh air and correct what I think are some misnomers. First off, saying that they presented a certain theory in Delhi's trial is a real jump because we don't have the transcript for most of Delhi's trial. It's been a big issue in this case that we do not have the transcript from Mr. Delhi's trial. State did not preserve that. We do not have it. And so I think putting an idea of what happened to Delhi's trial is is something we don't have in the record. They they proceeded on principle liability theory at Delhi shot and they did. As your honor asked Judge Moritz, they did give an accomplice liability instruction at his trial. Now, what Delhi did at his trial. And I think this is really critical to this court's evaluation today is Delhi's case took the form that this case should have taken. Right. Delhi said I did. I don't understand. You're first of all told us not to consider what went on in Delhi trial because we don't have the record. And now you're arguing what went on in the Delhi trial. From the portions that we know what what what we what we have is that Delhi took the position that what we don't know is we don't know what the prosecutor said. Right. So when when the state says, hey, they were just going after him in this one particular way, they didn't say he was firing fatal shots. We do not know that. What we do know is we know that Delhi said in in the Delhi said he did not fire any fatal shots. Delhi said that Vaughn Taylor did all the shooting in Delhi wasn't doing the shooting. But so what we have we have an eyewitness that has Taylor firing the first shot. I mean, no question. Nobody disputes that. And, you know, that's kind of a big difference for whatever the facts were in Delhi, which I guess we'll never know for sure. It is your honor. But but but the important thing is Delhi case took the form that this case should have taken. Right. Delhi Delhi took the position that he didn't fire fatal shots. I'm sorry, Judge Moritz, you're on mute and I see you talking, but I cannot hear you. Sorry, we had a train train go by there. Isn't that exactly what we're going to be doing or the court should have done here, which is a probabilistic inquiry about what would have happened? And I think you're you're saying exactly that, that if if that's what should have happened. Well, guess what? That is what would happen if we are doing this hypothetical inquiry. Isn't that exactly what you want to want to argue here? That's your honor. We don't have to give a hypothetical. We have an exact situation. We have we have another man who was there in the living room. Right. We have we have the same victims. We have the same situation. The difference here is Delhi said Taylor did did the shooting and killed him. And now from the sloop hearing, we know. And I'm not saying that Von Taylor didn't do any shooting. Judge Tim, you are absolutely correct. No, no one is saying Von Taylor's a saint. Certainly he was involved here. Certainly he fired the faith, the first shot. And and he was involved. But what did he go to the cabin? Did he go to the cabin with the intent to kill people? And did he aid his co-defendant in accomplishing that goal? No, your honor. No, your honor, he did not. He did not intend to kill these people. He did not intend to kill the people. I think he did. And he did nothing to help his defendant achieve that. There's nothing in the record that indicates that he helped Mr. Daly to achieve that, your honor. Now, I in all fairness, Judge Briscoe, it's a hard question. Right. Because he pled there wasn't a trial. And so you're asking questions, I think, would be something that a trial would have been explored more. And certainly at a trial might be explored more in a new trial. But in this situation, when he was pleading, they did not ask him to plead to that. Right. That's the issue that that you were that the court was asking about the beginning. What is the role of the accomplice liability statute in this as elements to this crime? And I obviously disagree with the state. The accomplice liability statute, 76 dash two dash two zero two has its own elements. It has separate elements. And the question here is when you are looking at first degree murder, you're asking whether someone caused the death or whether someone caused someone to cause the death. And in the latter scenario, what two dash zero two dash two zero two lays out is you've solicited, requested, commanded, encouraged or intentionally aided that second person to cause their death. How could Mr. Taylor have evaded accomplished liability here at trial based on based on the uncontroverted facts? I think I think the intent would have been the best way for them to argue that he evaded accomplished liability. Were they to go that route in in the trial? Well, he fired the first shot. I guess his theory would be I fired the first shot and missed or wasn't fatal. And Billy killed him under under that fact scenario. How could he not be charged with accomplished liability? I I'm not saying he could not be charged with accomplished liability, Your Honor. There's there's a very different thing between saying he could he could be charged with. He could be charged with any number of things. Right. He could be charged with accomplished liability. What we're saying is he wasn't charged with accomplished liability and he did not plead to accomplish. Mike, my question is more specific. How can you not be convicted of accomplished liability? The same question could be asked to Mr. Daly. How could he not be convicted of accomplished liability under the facts that would have been before them? He's there present with he's there present with with Mr. Taylor. Let's let's forget about Mr. Daly. He's not before us. Let's talk about Mr. Taylor. Could you respond to the chief's question? I think that when you go to trial. When you go to trial in a case, Your Honor, we don't know what the jury is going to do. Right. What a jury does is is that's up to them. We don't know what's going to happen. The question here is, does Mr. Taylor have the right to have the chance to have a jury make that finding? Because what happened here, what happened in this case, Your Honor? Does SLOOP require a trial? Does SLOOP require a trial in order to answer the question that the district court had here? No, Your Honor. Did the court apply SLOOP correctly? Yes, Your Honor. Why? How? Because what SLOOP does is SLOOP says we have we have a universe of information. We have a box. And within that box, we have what was known at the time at the time that Mr. Taylor pled guilty. And then what the court does is the court goes and it takes the new information that was developed through the SLOOP hearing through discovery. And it adds it into that box. And it says, now, putting that these things together, what would a reasonably instructed jury have done with this at the time had they considered this? Do you think do you think at that point in this hypothetical trial that the prosecution would have argued he was at least an accomplice? I think that I think realistically, they probably would have given an accomplice liability alternate instruction the same way as they did in Mr. Deli's case. They gave that alternate instruction. And we know that and we know that from the very prosecutor involved in this case from what he said at the preliminary hearing, don't we? Well, no, I I take issue with the characterization of the preliminary hearing preliminary hearing does not say what the state says it says that what the state saying is that at the preliminary hearing, they kept saying that they were pursuing accomplice liability as to both defendants. And they did not say that they were pursuing it as to Delhi. What they say is they don't say both of them are accomplices. I think with the prosecutor, I think with the prosecutor said is either way, either one of them could be convicted either as a principal or as an accomplice. Wasn't that the closing line? I believe what he said was he said both of them are culpable. And that's a very different thing from saying both of them are accomplices, because if you look at the argument he was making at the time, what he was doing was he was responding to Mr. And he was saying, no, no, no, he's guilty because he's got accomplice liability, even if he wasn't the shooter. Then he says now turning to Mr. Levine's arguments, that's Mr. Taylor's attorney. And he then makes arguments as to principal liability. He's saying Mr. Taylor was the shooter. So when he's saying both are culpable, he's saying one of them is culpable clearly as the principal and the other one is culpable either as a co-principal or as an accomplice. That's how he that's how he's framing it at the preliminary hearing. So you so you apparently argue that there are different elements for accomplice and principal charges, I guess, is what you think. Yes, Your Honor. Elements it's not it's not just the crime of capital homicide. No, capital homicide is the offense, but there's different charges that go into which theory of culpability you're pursuing under that. But that's the theory of that's the theory of the prosecutor is not. It's not really the charge doesn't doesn't Briggs tell us what the charge is and that it's the elements are the same. The the charges for the charge in this case was first degree murder. The excuse me, the offense in this case is first degree murder and he's charged with first degree murder. If you want to just convict him of first degree murder as a principal, you do not need to have anything more. Right. You can go under the elements of that. Did he cause the death? If you want to pursue a theory under accomplice liability, then additional elements come into play. In that situation, you have to have that. He solicited, requested, commanded, encouraged or intentionally aided Mr. Deli to have caused their death. It's simply a means of proving the causation element rather than an element. Correct. Right. It's a means. It's not an element. And the Utah courts have said it doesn't have to be charged when you're charged as a principal, you're automatically charged as an accomplice in Gonzalez. In Gonzalez, they say that because all is first is, first of all, is distinguishable for a lot of reasons. Right. In Gonzalez, they said that. And then they said and then they said in D.B. They said you can you can you can go all the way up to the very close of evidence. You can you can raise the accomplice theory or actually assert it, pursue it at trial. As long as you have presented during the course of the trial, something that notified the defendant that they had such liability. You just said that in our hypothetical trial, which we must conduct under under Shlup, that that evidence would come in and that you would expect that the government would ask for a instruction on accomplice liability. That's exactly what we're supposed to do under Shlup. And and then we have to make the determination with that evidence, having come in strong evidence of accomplice liability and an instruction in this hypothetical trial. Would any reasonable juror have found him guilty beyond a reasonable doubt or would no reasonable juror have found him guilty? And and I think you've answered that question yourself. Well, I think here I don't think that's exactly what I've said, Judge Moritz, because the distinction here in what you're saying, I think, from from what I was trying to say, maybe I was saying it in eloquently. I'm sure I was is. What the state wants to do here is not have us just look at what would happen if we gave this with the new information to it back to the jury and had to make a decision. They want to change the charge. Well, let's say we disagree with you. Let's say we disagree with you and that we find that the charge was was plenty sufficient, that these are not elements, their means, that this is a means, not an element, and that that was not necessary. What's your argument at that point? That they're not changing the charge. Well, I mean, do we want to get into the discussion of why I think this is the difference? I want to have an argument if we disagree with you about that particular point and with the district court. What where does that leave you in this hypothetical trial that we're supposed to? What would happen? There's a lot. There's a lot of ifs in that question, Your Honor. But there's only one. If we disagree with you that this is a this is an element rather than a means and had to be charged. And so he wasn't charged with the crime of accomplice liability. It's not a theory. It's a crime. If we disagree with that, where does that leave you when we conduct this hypothetical analysis? It still leaves us in a position where Mr. Taylor did not have did not enter a knowing and intelligent plea. But as far as the analysis, when you're doing the analysis, I think if you were to make that series of conclusions that you're suggesting it, it could. It's really only one conclusion. Well. OK, I think in that scenario, if you're saying that accomplice liability does not have its own elements and does not state a separate theory, then Mr. Taylor would potentially be in trouble on the actual innocence gateway. When we conduct. That's what I'm talking about. He wouldn't make it through the gateway. I'm not sure. I'm not sure what the I'm not sure. OK, I understood your your argument was that Mr. Taylor should have been charged count one principal count to principal count three accomplice count for accomplice. And that's what the state failed to do here. And you hang your hat on BB and Bowsley. Is that essentially what your argument is? Yes, your honor. That's the argument in that. And the argument is, is that and then it's for Mr. Taylor to have a knowing and intelligent plea. Right. He has to know what he's pleading to write the Supreme Court stressed 80 years ago in Smith versus O'Grady that real notice of the true nature of the charge against the defendant is the first council. This is not an appeal determining whether or not the court heard or not on the withdrawal of a guilty plea. You're talking about knowing and voluntary entry of the plea. That's not our issue. We're talking about potential of showing actual innocence under Shlute. Your honor, this the the second part of this as to whether there is a ineffective assistance of counsel, I think, depends in part on the due process, but I understand just just one just following up on my previous question. And I guess your position then under under Utah law at the at the plea stage, you have to have these separate counts articulated and and presented to the to the defendant, even so that that really means under Utah law. If you get charged with murder you you plea to it. Then the kind of the state would be barred forever in asserting an accomplished liability theory, even though if he'd gone to trial. There was nothing that would prevent the state from presenting evidence as late as trial that would be adequate notice of accomplished liability. It just seems it's just backwards to me that the plea would cut off a theory of liability that that going to trial with time. Well, I, I understand. I understand why that seems odd, but but at the same time this is this is Utah requires that notice be given in some way. Right. And it gives them options on this. And so, would one option have been a jury instruction. Sure, it would. But they also have the option is the state Supreme Court said in dB, they have the option to charge them this way. From the get go, they chose to do that. Yeah, just to go back to that. I mean, even if even if the preliminary hearing the plea colloquy the plea agreement the information, even if they had stronger or maybe just conclusive evidence of his potential for accomplished liability. The fact that he was not charged and pled guilty to an independent count of accomplishes this the state still loses, even if you know there was no question about the ability of the state to pursue accomplished liabilities. Is that correct. That's correct. You're on. Okay, that's correct. And I think this is, you know, there's, there's, I, I understand why the court doesn't want to talk about deli's case but but I think deli case is really important here, because when the state says there's not a jury anywhere that's going to quit him on these facts. They did that. They did that to his co defendant. And when the court asks questions like, does this make a difference in terms of the, the, the tendency would have received absolutely, this could make a difference, even if he even if he were to be found guilty of accomplished liability to think that that doesn't have an effect on whether he gets the death penalty or not. Are you moving to ineffective assistance prejudice now. Are you still innocent. Okay, I am with the court, like me not to because I can answer. No, no, no, no, I just want to make sure that you're not arguing this prejudice point as a part of the actual instance. No, no, I'm going to the fact that, you know, in Utah, they only have six statutory mitigators and then they have a catch all one of the statutory mitigators is accomplished liability. So to think that he wouldn't have chosen accomplished liability. If he had that option presented to him if he had information from his attorney that that was something he might actually prevail on. That's a, that's a big difference for a man who was had no mitigation his attorney put on no mitigation. Now, does mitigation. Did you make did you make that argument in the district court. Did we make the argument that that he should accomplish liability was a mitigator. We did not make that argument in the district court. We did not make that argument in the district. I'm merely raising it now because Judge Moritz was asking a series of questions about whether A reasonable defendant could prefer accomplished. Actually, I believe you said, Judge Tim Kovacs couldn't a reasonable defendant prefer accomplished liability answers. Absolutely. Because it can make a huge difference here in in what his sentence would have been. So I'm raising it and in response to that the He His lawyer recommended that he go to trial. And, you know, certainly if he'd gone to trial accomplished liability would have been on the on the table. Assuming you, you know, setting aside whether there was adequate notice or not. His lawyer would have told him, we can go to trial as a principal, or we can, you know, I think the fatal shot theory was at least on the table before he pled in theory says, or we can go accomplish and As I understand the record. Mr. Taylor said I wanted to go to trial. I wanted to plead guilty to avoid the impact on the victims in my family's and get it over with. And not only that, within a few days after he pled guilty Deli was convicted of lesser crimes and Taylor could have asked the court to revoke his guilty plea. He still could have changed, please. After the deli conviction, but chose not to. So, you know, why would we believe that his decision would have been different if the ballistics evidence that had been presented to him as a stronger out on principal liability. I don't think it's dispositive to the issues before this court, but but as a factual matter, Your Honor, he did move to withdraw his his guilty plea later and it was denied. He did. He did make that motion. Is that because it was untimely or on the merits. I think both. I think it was actually both. It was arguably a day on timely. It. I think he had 38 to do it. I believe it was filed on the 31st day. It wasn't there ruling that the plea was knowing and voluntarily made. The court when it took its plea said it was knowing and involuntarily. And in review at the point that Judge Timkovich is referring to. Wasn't there a finding in review that that is, in fact, so Yes, I was going involuntary. Yes, although I'm not sure whether that finding was made at that. It was probably made at that time as well. There is before the court the record of a later proceeding where the trial court. And I'm not sure if that's where the judge Briscoe you're thinking of where the court in 2004. And this is referenced in our breach where the court in 2004 was saying you made a knowing and intelligent plea. And that was an important distinction because what the court said at that point wasn't just you made a knowing and intelligent plea. The court said you were principally liable for this. You did this. You killed them. That's what the trial judge was saying. Still in 2004 because that was the trial judge's belief. The belief was that he had pled as the principal to the murders. And it wasn't just his belief in Taylor one. The Utah Supreme Court says Vaughn Taylor committed the murders in Taylor three. The Utah Supreme Court says Vaughn Taylor was the one who killed the women. The prosecutors even when I deposed them in this case during the sloop hearing and I said to them who do you think did this. They said both of them. Both of them killed them. Not both of them in terms of accomplice liability. Both of them in terms of they were both shooting at them and they both killed him all along. This has been co-principal liability that they have sought. And they've sought co-principal liability for two reasons. One, because you get the maximum charge that way. Right. You get a jury who's been looking at them in the worst light. And secondly, you get rid of the statutory mitigator. Even if he would be tried under accomplice liability. Don't you think a reasonable jury correctly instruction instructed would impose the death penalty here. No, I do not, Your Honor. No, no jury. And to the best of my research, and I have looked for this. I have not seen anyone who's gone to death row in the state of Utah on an accomplice liability here. No one. So no, I don't think a jury wouldn't. I don't think we can assume that at all. And again, they had that with Mr. Daly. They charged that with Mr. Daly. And what's important here is they charged it when they charge it with Mr. Daly and you look at that charge. It's either or. You're either a principal or you're an accomplice. You cannot be both. And the problem here is the state wants to say he pled guilty to both. That's a legal impossibility in the state of Utah. He could not have pled guilty to both. He could have only pled guilty to one or the other. And here he didn't. He not only didn't have noticed that he was being charged as an accomplice. Right. The words, the statute, even the name of it are not mentioned in the plea. So to determine what he pled to, we should look at his plea statement. Yes. I think you should look at the plea colloquy. The plea colloquy says when they're saying him and Daly, that's co-principal liability. What he says, he says, and I quote in his plea statement, my conduct and the conduct of other persons for which I am criminally liable. Isn't that accomplice language? No, Your Honor. What that what that is, is conduct of other persons for which I am criminally liable. There's not there's not a one word answer to this. So let me let me explain to why it's not. It's not because, number one, it's an ambiguous statement in which they're trying to infer an entire set of elements into and that for which I'm criminally liable. As we showed in our briefing to the court, we found that statement in eight cases and in seven of them, there is no co-defendant because it's boilerplate language in the state of Utah. It's not language that's used for. When you read the rest of the statement, there's the statement that the two of them caused the deaths of these two victims. Exactly. That's principal liability. That's co-principal liability. Or is it or is it accomplice liability potentially? It's co-principal liability. If you to cause their death makes you a principal to to cause someone else to cause their death is what makes you an accomplice. And doesn't the plea statement say that? No, the plea statement says they caused the death. So it's it's a principal liability statement. That's not an accomplice liability statement. Well, it also says I, Lester Taylor, in conjunction with Edward Stephen Daly. Right. That's. Again, that sounds like an accomplice. Again, that's co-principal. The state is charging him as co-principals. If they wanted to charge him as accomplices, your honors, they knew how to do it. We know they knew how to do it because they wrote an instruction in Mr. Daly's case that charges it the proper way. They didn't do that here. At best, what you have in the plea agreement is ambiguous language that's vague or misleading. And in this in this circuit, this court has repeatedly said that in interpreting a plea agreement, we apply general principles of contract law, looking to the agreements, express language and constrain any ambiguities against the government as the drafter of the agreement. There's a there's a case after case in the United States versus Altamirano-Quintero, United States versus Yanis Rodriguez. Those are cases that that you wrote, Judge Tinkovich and Judge Briscoe wrote. These are cases where you said over and over again, if this is vague, we can screw it against the government. We don't construe it against Mr. Daly. You're back into the box of involuntary pleas, motions to withdraw pleas. Well, that's not our question. But it is one of the questions in this in the case, respectively, Your Honor, is whether the plea is knowing and intelligent is a huge factor as to whether this plea is any good. I'm not sure how we just set that aside and don't deal with whether it was an intelligent, knowing plea. Counselor, you're out of time. Judge Moritz or Judge Briscoe, any additional questions? All right. Thank you. If Mr. Schwab, could you give Mr. Peterson three minutes for rebuttal? Thank you, Judge Tinkovich. The district court had no jurisdiction to consider the substantive question of the validity of Mr. Taylor's plea. The only way that the court could get to any substantive claims, constitutional claims like that, is by first passing through the gateway. The district court's analysis here had it backwards. By reviewing this as an error correction procedure, it usurped the role of the equitable inquiry that was required. And under the equitable inquiry, as has been discussed at length, the prosecution probably would have asked for and received an accomplice liability instruction. Mr. Taylor has always conceded that he very likely would have been convicted as an accomplice were that to occur. And that is a fatal concession. He simply cannot pass through the fundamental miscarriage of justice gateway. He wouldn't potentially be in trouble. As Taylor's counsel said, he would have been done. That would have been the end of the inquiry. If accomplice liability is a means, not an element, then Taylor is absolutely guilty of what he pleaded to, which is capital murder. So all of the arguments about notice and about the validity of the plea, all of that is irrelevant to this inquiry. It's a red herring. Moving to ineffective assistance of counsel. Counsel told the court just now that Mr. Levine put on no mitigation case at trial, at sentencing rather. That's simply not true. He did put on an extensive case about Mr. Taylor's healthy and supportive family background and Mr. Taylor's relative lack of a criminal history. He did put on a mitigation case, just not the accomplice one, just not the I missed mitigation case, because frankly, that's not a very good case. And irrespective of whether he had. What do you think? What do you think about his point that accomplice liability is a mitigator under? And that's where I was just heading, Your Honor. Irrespective of whether he had that statutory mitigator. Number one, the jury wouldn't have considered it mitigating because he was the prime mover in the killings. But number two, the jury has a catch all mitigator and any other circumstance that mitigates the offense. And if they considered his actions to be less culpable than Mr. Daly's and therefore deserving of more lenience, they could have even without the statutory mitigator. He doesn't need that mitigator, that statutory mitigator to mitigate the sentence. I see that I'm out of time. So the warden asks the court to reverse both the Shloop order, set aside the Shloop findings and reverse the grant of the writ and will submit it. All right, counsel. Thank you. We appreciate the arguments and we appreciate Mr. Pomerantz joining the capital unit in Utah to assist on the defense of Mr. Taylor's case. And we you are now excused. The case will be submitted.